

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 24, 2018

**BY ECF AND HAND**

The Honorable George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re:  *United States* **v.** *Paul Ifeanyichukwu Onwuvuariri*, **S1 17 Cr. 646 (GBD)**

Dear Judge Daniels:

  The defendant in this case, Paul Ifeanyichukwu Onwuvuariri, is scheduled to be sentenced on May 1, 2018 at 12:00 p.m., having pled guilty to money laundering, in violation of Title 18, United States Code, Section 1957.  The Government respectfully submits this amended sentencing submission in advance of the sentencing.[1]  Pursuant to a plea agreement between the parties, the United States Sentencing Guidelines ("Guidelines") range is 15 to 21 months' imprisonment.  For the reasons set forth below, the Government submits that a sentence within the Guidelines range is warranted in this case.

  **A. The Superseding Information and the Defendant's Guilty Plea**

  The Superseding Information in this case charges the defendant with money laundering.  As alleged in the Superseding Information, the defendant laundered thousands of dollars in fraudulently obtained proceeds obtained in connection with a scheme to defraud the elderly through false representations that their loved ones had been arrested and need bail money.

  On December 12, 2017, the defendant pled guilty to the Superseding Information pursuant to a plea agreement in which the parties stipulated that the applicable Guidelines range is 15 to 21 months' imprisonment.  During his allocution, the defendant admitted that

---

[1] The Government submitted a sentencing submission via ECF on April 24, 2018, at 4:49 p.m.  The Government is submitting this amended sentencing submission to revise Part C, below, and clarify its position on the application of the United States Sentencing Guidelines.  This submission supersedes the Government's prior submission from earlier today.  As set forth below, the Government's position is that the Court should adopt the Guidelines calculation set forth in the parties' plea agreement and the PSR, and sentence the defendant within the stipulated range of 15 to 21 months' imprisonment.

he "open[ed] up accounts . . . where . . . funds were wired to," withdrew those funds, and then "re-deposit[ed] [those funds] into accounts." The defendant also admitted that the funds were criminally derived, and that he knew what he was doing was illegal.

### B. Offense Conduct

The defendant and his co-conspirators facilitated the laundering and concealment of thousands of dollars sent by victims of a fraudulent scheme whereby elderly individuals, often grandparents, were falsely told – by a fraudster pretending to be a member of law enforcement – that their grandchild or relative had been arrested and that bail money was needed to secure their release. During some of the calls, another individual pretending to be the grandchild or relative would get on the phone, begging the victim to send bail money and not to tell their parents about the arrest. The purported law enforcement official, who sometimes claimed the victim's relative had been arrested in Mexico, would then get back on the phone and direct the victim to send thousands of dollars in purported bail money to various individuals via wire transfer into particular bank accounts.

It was the defendant who recruited those individuals to receive the victims' money, which was then turned over to the defendant. Onwuvuariri personally transported individuals to bank locations to pick up money, took control of their online banking, gave direction as to how and when to withdraw victims' funds, and received the money – thousands of dollars – in cash. In some instances, the defendant lied to these individuals, telling them the funds were coming from the defendant's family in Nigeria, and were for a car or school expenses.

While the fraud on each of the victims followed a similar pattern, its effect was uniquely devastating to each of them – both financially and emotionally. That is, beyond the devastating financial loss incurred by these elderly individuals – many of whom who have limited resources and substantial expenses – each of them suffered emotional trauma when they received these telephone calls, and then the intense embarrassment of having had their natural familial love for a grandchild so ruthlessly exploited.

### C. The Presentence Investigation Report and the Advisory Sentencing Guidelines Range

The Guidelines calculation set forth in the PSR is consistent with that set forth in the plea agreement. The plea agreement and the PSR calculate a base offense level of eight pursuant to U.S.S.G. § 2S1.1, plus the number of offense levels from the table in U.S.S.G. § 2B1.1 corresponding to the value of the laundered funds. As the value of the laundered funds amounts to between $95,000 and $150,000, eight levels are added and the resulting base offense level is 16, pursuant to U.S.S.G. § 2S1.1(a)(2). Additionally, a one-level enhancement is applicable, pursuant to U.S.S.G. § 2S1.1(b)(2)(A), because the defendant pleaded guilty to a violation under 18 U.S.C. § 1957. Subtracting three offense levels for acceptance of responsibility, U.S.S.G. §3E1.1(a), results in a total offense level of 14.

The plea agreement and the PSR assign zero criminal history points to the defendant. In October 2011, the defendant was charged with insurance fraud in Martinez, California. On or

about April 16, 2012, the defendant was convicted in Contra Costa Superior Court of making false claims for payment pursuant to an insurance policy, in violation of California Penal Code § 550(b)(1). He was sentenced to two years' imprisonment. However, on or about June 4, 2017, the defendant's conviction was dismissed pursuant to California Penal Code § 1203.4. Accordingly, the parties agreed in the plea agreement that this is conviction is not counted. Additionally, at various other times, the defendant has been arrested for speeding, trespassing, giving a false name, and driving with a suspended license. The plea agreement and PSR calculate the defendant's criminal history as Category I. Therefore, under the plea agreement and PSR, the applicable Guidelines range is 15 to 21 months' imprisonment. The Government's position is that that calculation should be adopted and that the defendant should be sentenced within the applicable Guidelines range. In the final PSR, Probation recommends a sentence of 15 months' imprisonment and three years of supervised release.

### D. Discussion

A sentence within the applicable Guidelines range is necessary in this case to reflect the seriousness of the defendant's offense, to afford adequate deterrence of future criminal conduct, and to protect the public. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

First, a sentence within the applicable Guidelines range is necessary to reflect the seriousness of the defendant's offense. The impact of the fraudulent conduct facilitated by the defendant upon the victims in this case is substantial. In addition to the financial loss, many of the victims suffered emotional distress and subsequent embarrassment upon learning they were victims of a fraud. While these elderly victims cannot travel, they have conveyed to law enforcement—as described in the Complaint, PSR, and a victim impact statement—the extreme harm caused to these victims, who are among the most vulnerable members of society.

Second, a sentence of imprisonment within the guidelines range is necessary to afford adequate deterrence to those who, like Onwuvuariri, facilitate, through money laundering, schemes that prey on the elderly causing devastating financial loss, embarrassment, harm to the victims' relationships with their grandchildren, and often anxiety over the potential that family will, upon learning that the victims have been taken advantage of, seek to remove the victim's independence or autonomy. Without money launderers like the defendant, these schemes would not be possible: money launderers are necessary to quickly move stolen funds from victims' accounts, outside of the reach of banks and law enforcement, before victims realize they have been defrauded. Deterrence is crucial in this case because pernicious fraudulent schemes such as the "grandparent scam," facilitated by money laundering, are widespread but difficult to investigate and prosecute. According to the Federal Trade Commission, more than 40,000 incidents of the "grandparent scam" or its variants have been reported since 2010 and it is estimated that many more go unreported. *See* Melanie Hicken, *"Grandparent Scams Steal Thousands From Seniors,"* CNN (May 22, 2013), http://money.cnn.com/2013/05/22/retirement/grandparent-scams/. Congress has recognized the magnitude of the problem. In July 2014, the United States Senate Special Committee on Aging held a hearing focused, among other things, on the prevalence of the "grandparent scam," the devastating impact it has on seniors across the nation, and efforts to combat it. *See* U.S. Senate, *"Hanging Up on Phone Scams: Progress and Potential Solutions to*

*this Scourge*," (Jul. 16, 2014), https://www.aging.senate.gov/hearings/-hanging-up-on-phone-scams-progress-and-potential-solutions-to-this-scourge.

Additionally, as widespread as the grandparent scam is, the difficulty in detecting, investigating and prosecuting the fraud is substantial. Often, as in this case, the fraudulent phone calls are made from outside the United States, using burner or throw-away phones, making it difficult for law enforcement to identify the callers. Through the laundering of funds and the recruitment of others to pick up money sent by victims, members of the scheme are able to evade detection. Moreover, the victims often have difficulty assisting in the investigation both because of their age and because, having already been defrauded by someone identifying as law enforcement, the victims refuse to believe actual law enforcement investigating the case. Indeed, the issue arose in this very investigation as agents were sometimes rebuffed as they attempted to interview witnesses. Victims also often fail to report the fraud because of embarrassment at having fallen victim and the consequences it may have on their independence if family members learn they have been taken advantage of. It is precisely in such a case – a devastating crime which is widespread but difficult to detect and prosecute – that a substantial sentence of imprisonment, within the advisory Guidelines range – is needed to deter other who would engage in such conduct.

For the reasons set forth above, particularly the need to afford adequate deterrence to those who would engage in such fraud, and launder money to facilitate the fraud, which preys upon the weakest members of society, causing untold embarrassment, anguish, financial loss, and harm to loving relationships between grandparents and their grandchildren, the Government respectfully requests that the Court impose a substantial sentence of imprisonment within the applicable Guidelines range.

    Very truly yours,

    GEOFFREY S. BERMAN
    United States Attorney

by: /s/ Nicolas Roos
    Nicolas Roos
    Assistant United States Attorney
    (212) 637-2421